IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Placid Oil Company,<br><br>    Appellant,<br><br>v.<br><br>C.C. Abbitt Farms, LLC, and<br>J&J Commodities, LLC,<br><br>    Appellees. | Case No. 3:16-CV-00047-M |

**MEMORANDUM OPINION AND ORDER**

    Before the Court is Appellant Placid Oil Company's ("Placid") appeal of the bankruptcy court's grant of the Motion to Dismiss filed by Appellees C.C. Abbitt Farms, LLC and J&J Commodities, LLC [ECF No. 1].  Placid Oil filed its Brief on March 4, 2016 [ECF No. 7].  C.C. Abbitt Farms and J&J Commodities filed Appellees' Brief on April 1, 2016.  For the reasons stated below, the decision of the bankruptcy court is **AFFIRMED**.

    **1.   Factual and Procedural Background**

    Placid was an oil developer that operated in Louisiana beginning in the 1930s.  In connection with its exploration activities, in 1979 Placid and the Bodcaw Company executed a mineral deed on Bodcaw's property (the "Mineral Deed").  Bodcaw is the predecessor in interest to C.C. Abbitt Farms and J&J Commodities, and the property burdened by the Mineral Deed is now owned by Abbitt Farms and J&J Commodities.

    Before the Mineral Deed was executed, Placid drilled and plugged three oil and gas wells on what is now the Appellees' property.  Eight wells were drilled by Placid and plugged between 1979 and 1987.  Twenty-four additional wells were drilled after Placid filed for bankruptcy under Chapter 11 in 1986.  In sum, eleven wells were drilled and plugged before the filing of Placid's bankruptcy case in 1986 (collectively known as the "Eleven Dry Holes").

1

In the bankruptcy court, a consensual Modified Fourth Amended Chapter 11 Plan of Reorganization ("Plan") was confirmed on September 30, 1988 (the "Confirmation Order"). The Confirmation Order included a broad discharge of all claims against Placid that arose on or before the date the Plan was confirmed, except for Placid's obligations under the Plan itself. The Confirmation Order also included a broad injunction to prevent future lawsuits or demands against Placid based on discharged claims (the "Discharge Injunction"). The Chapter 11 case was fully administered, and closed in 1997.

On July 21, 2006, Appellees initiated a court proceeding against Placid in a district court in Catahoula Parish, Louisiana (the "Catahoula Case"). In the Catahoula Case, Appellees sought damages from Placid for environmental contamination to the surface, subsurface soils, and groundwater, allegedly caused by improperly plugging of wells. On January 21, 2009, the bankruptcy court reopened the case to determine whether the Catahoula Case claims were discharged by the Confirmation Order, and if appropriate, to enforce the Discharge Injunction.

On June 19, 2015, Placid filed its First Amended Complaint against Appellees in the adversary proceeding from which this appeal stems (the "Adversary Proceeding"). R. Vol. 2 at 103, ECF No. 3-2 at 65. Placid argued that any injury asserted by Appellees in the Catahoula Case related to the Eleven Dry Holes and thus the relevant events occurred before the Confirmation Order and the claims were thus barred by the Discharge Injunction. Placid also sought sanctions against Appellees for contempt for refusing to dismiss claims barred by the Discharge Injunction. On July 7, 2015, Appellees answered the Complaint and counterclaimed. R. Vol. 2 at 160, ECF No. 3-2 at 122.

On August 17, 2015, Appellees voluntarily dismissed, with prejudice, their claims in the Catahoula Case relating to the Eleven Dry Holes. R. Vol. 2 at 250, ECF No. 3-2 at 213. Shortly thereafter, Appellees filed in the bankruptcy court a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1), alleging that the case or controversy was rendered moot by the dismissal of the state court claims relating to the Eleven Dry Holes. R. Vol. 2 at 165, ECF No. 3-2 at

127.  On October 29, 2015, the bankruptcy court granted the motion to dismiss.  R. Vol. 3 at 356, ECF No. 3-3 at 109.  Placid appeals.

### 2. Basis of Appellate Jurisdiction

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158.  The bankruptcy court's Order dismissing Placid Oil's adversary proceeding qualifies as a "final order" from which the district court can hear an appeal.  "[A]n order which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment . . . ." *England v. FDIC*, 975 F.2d 1168, 1171 (5th Cir. 1992).  "Finality in bankruptcy cases is contingent upon the conclusion of an adversarial proceeding within the bankruptcy case, rather than the conclusion of the entire litigation." *Id.*

### 3. Legal Standard

#### a. Standard of Review

This Court applies the same general standard of review that the Fifth Circuit applies in reviewing a bankruptcy court's findings of fact and conclusions of law.  *In re SI Restructuring, Inc.*, 542 F.3d 131, 134 (5th Cir. 2008).  Under this standard, "a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo." *Id.*  This Court "may affirm for any reason supported by the record, even if not [explicitly] relied on by the [bankruptcy] court." *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009).

#### a. Rule 12(b)(1): Dismissal for Lack of Subject Matter Jurisdiction

A bankruptcy court's dismissal "under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction" is generally reviewed de novo*. In re The Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 601 (5th Cir. 2014) (citing *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012)).  However, "purely factual findings" by the bankruptcy court in ruling on a Rule 12(b)(1) motion are reviewed for clear error.  *Id.* (citing *In re Eckstein*, 672 F.3d at 314; *Complaint of Tom–Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996)).  Lack of subject matter jurisdiction, when found, is usually in one of three instances: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*

3

*v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Ultimately, the burden of proof rests with "[t]he party asserting jurisdiction." *In re Eckstein*, 672 F.3d at 320.

4. Analysis

The issues raised in this appeal concern (1) whether the bankruptcy court properly granted Appellee's Motion to Dismiss, finding that no case or controversy remained and that the Appellant's adversary Complaint was therefore moot; (2) whether, in the alternative to dismissing the case on grounds of mootness, the bankruptcy court properly exercised its discretion to abstain from hearing the adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1); and (3) whether the bankruptcy court abused its discretion in dismissing Placid's adversary proceeding without first granting Placid leave to amend its Complaint. These will each be addressed in turn.

    a. **The Bankruptcy Court Properly Granted the Motion to Dismiss**

Placid argues that the bankruptcy court erred by dismissing the Adversary Proceeding on two grounds: (1) that in the Adversary Proceeding Placid sought discharge of any pre-Confirmation Order claims relating to its oil and gas activities, not just the Eleven Dry Holes; and (2) that Placid's claims against Appellees for sanctions for contempt due to their conduct in the Catahoula Case were improperly dismissed.

        i. **Discharge Claims**

Placid maintains that the case or controversy in the Adversary Proceeding was not mooted by Appellees' dismissal in the Catahoula Case of their claims concerning the Eleven Dry Holes. Instead, Placid argues that the Adversary Proceeding was brought to enforce the Discharge Injunction against a wide variety of claims brought by Appellees against Placid in the Catahoula Case, including claims for environmental contamination caused by Placid on Appellees' property. Placid argues that "any or all" of this broad array of claims may have occurred prior to the Confirmation Order, and accordingly those claims are still at issue in the Adversary Proceeding.

A claim is moot when a case or controversy between the parties no longer exists. *Brinsdon v. McAllen Indep. Sch. Dist.*, 2016 WL 4294797, at *3 (5th Cir. Aug. 9, 2016) (citing *Board of Sch.*

*Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975)).  A claim becomes moot when the parties lack a legally cognizable interest in the outcome and it is impossible for a court to grant "any effectual relief whatever" to the prevailing party.  *Knox v. Serv. Emps. Int'l. Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)) (internal quotation marks omitted); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013).  If a case has been rendered moot, a federal court has no constitutional authority to further act on the mooted matter.  *Ctr. for Bio. Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 426 (5th Cir. 2013).  However, "as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Knox*, 13 S. Ct. at 2287.

Placid argues that it sought in the Adversary Proceeding to bar the Appellees' prosecution in the Catahoula Case of "all discharged pre-Confirmation claims," and that Appellees' dismissal of their claims relating to the Eleven Dry Holes "neither affected nor impaired Placid's remaining claims of discharge under the Confirmation Order as to any other pre-Confirmation oil and gas activities at issue in the Louisiana litigation."  ECF No. 7 at 8.  Appellees respond by arguing that Placid's First Amended Complaint in the Adversary Proceeding contains only claims relating to the Eleven Dry Holes, and accordingly, no other case or controversy remains in the Adversary Proceeding after the dismissal of the Eleven Dry Holes claims.

Placid's First Amended Complaint contains numerous references to the "Eleven Dry Holes" and the "eleven wells."  *See generally* First Am. Compl., App. R. Vol. 2 at 103–20, ECF No. 3-2 at 65–82.  For instance, Placid sought "a determination by [the bankruptcy court] that all Defendants' claims against Placid arising from the eleven (11) wells that were plugged and abandoned before September 30, 1988 were discharged by the Confirmation Order and that the Discharge Injunction bars any further prosecution of such claims."  *Id.* ¶ 8.  Placid sought a judgment that "Defendants are enjoined forever from pursuing against Placid any claims arising from the Eleven Dry Holes or any other activities of Placid completed before September 30, 1988."  *Id.* ¶ 28.  Placid also sought contempt sanctions on the basis that "[d]efendants have violated the Discharge Injunction willfully and continue to violate the Discharge

5

Injunction willfully by refusing to dismiss their claims against Placid arising from the Eleven Dry Holes, despite the fact that such claims are barred." *Id.* ¶ 29.

The only reference in Placid's First Amended Complaint to claims other than those relating to the Eleven Dry Holes is in Paragraph 28, which references "*any other activities* of Placid completed before September 30, 1988." *Id.* ¶ 28 (emphasis added). Nowhere in the First Amended Complaint does Placid identify any actions allegedly violating the Discharge Injunction other than claims relating to the Eleven Dry Holes.

Nor does the record before this Court indicate that Placid had any other claims for which it sought to confirm were discharged. During the hearing on Appellees' Motion to Dismiss the Adversary Proceeding, the bankruptcy court tried mightily to obtain from Placid's counsel a description of other asserted claims for which it was seeking to enforce the Discharge Injunction.

> THE COURT: As I mentioned, I went back and studied the complaint, and it does appear to be all about . . . the 11 dry holes, the 11 dry holes. That's pretty much all I hear about in the first amended complaint.
> . . .
> Maybe you can tell me: what are the other claims?
>
> MR LESLIE: Well, we know what the claims are. We just don't know to what they relate.
> . . .
>
> THE COURT: Well, wait a minute. Just tell me, what are the other claims?
>
> MR. LESLIE: It has to do with damages which resulted from the erection of equipment, tanks, pipes, tank batteries, flow lines, concrete pads, and other oil and gas related equipment. It also relates to storage and disposal bits. Now, those damages, we don't know when they started, when the—when the flow of damages start and when . . . did that claim arise? . . .
>
> THE COURT: Help me understand. I just don't understand how, after nine years of litigation, people don't know what claims are being asserted for damages that occurred before September 1988.

R. Vol. 3 at 383–84, ECF No. 3-3 at 136:1–137:11.

> THE COURT: I'm going to ask once again, and I'm sorry for repeating myself, but I just want, if there's an answer here, I want to get to it. Can you tell me exactly what has been asserted against Placid, other than claims related to the 11 dry holes that are now dismissed, that appears to suggest a claim for damages that occurred before September 30, 1988?

6

> MR. LESLIE: Well, in that regard, I'd ask the Court to take judicial notice of what appears to be Exhibit B to the motion to dismiss, which is Plaintiff's sixth amended and supplemental petition for damages [in the Catahoula Case].
> . . .
> There's lots of language here about things other than and in addition to the 11 dry holes and the 23 other wells which are still at issue. Then we've got all this other stuff on the 1,400 acres that they're complaining about. And some of that probably relates to periods prior to the entry of the confirmation order. We simply don't know.

R. Vol. 3 at 389–90, ECF No. 3-3 at 142:9–143:25

> THE COURT: I mean, I'm just trying to figure out, do we have any potentially discharged claims that are still being pursued here? You haven't identified them to me in the complaint.
>
> MR LESLIE: No.
> . . .
>
> THE COURT: What are they pursuing that is before 1988?
>
> MR LESLIE: We are pursuing at this point in time two things, one of which is enforcement of the discharge injunction against any claims related to items on the . . . 1,400 acres other than the 11 dry holes.
>
> THE COURT: But, I mean, I get that, but what is it? What is it?
>
> MR LESLIE: We don't know.
> . . .
>
> THE COURT: I just don't get nine years and you don't know what else might be out there pertaining to pre-1988. I mean, how—what do I enjoin?

App. R. Vol. 3 at 393–94, ECF No. 3-3 at 146:19–147:20.

As the party asserting jurisdiction, Placid carries the burden of proving that its discharge claims were not rendered moot by Appellees' dismissal with prejudice of the Eleven Dry Holes claims in the Catahoula Case. However, Placid has not identified any legally cognizable interest that it continues to assert in the Adversary Proceeding. The First Amended Complaint refers only vaguely to "any other activities" occurring before the Confirmation Order that may be subject to the Discharge Injunction, but when pressed by the bankruptcy court, it could not identify any such claims that were asserted. Thus, Placid has not pleaded more than the mere possibility that Appellees might assert claims subject to the Discharge Injunction. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheet possibility that a defendant has acted unlawfully." (quoting *Bell Atl. Corp. v.*

7

*Twombly*, 550 U.S. 544, 555 (2007)); *Friends of the Earth, Inc. v. Laislaw Envtl. Servs., Inc.*, 528 U.S. 167, 193 (2000) ("[F]ederal courts should aim to ensure 'the framing of relief no broader than required by the precise facts.'" (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974))). Accordingly, the bankruptcy court did not err in dismissing Placid's discharge claims as mooted by the dismissal of the claims related to the Eleven Dry Holes.

### ii. Contempt

Placid also maintains that its claim for sanctions and attorney's fees against Appellees for contempt for violating the Discharge Injunction is not moot. "Civil contempt can serve two purposes, either coercing compliance with an order or compensat[ing] a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961–62 (5th Cir. 1996)) (internal quotation marks omitted). "Remedial civil contempt sanctions can be appropriate even after the underlying litigation has terminated, in contrast to coercive civil contempt, which becomes moot if the underlying proceeding terminates." *Id.* at 263 n.8.

In the Adversary Proceeding, Placid sought fees and sanctions related to Appellees' claims in the Catahoula Case. First Am. Compl. ¶ 29. Placid maintains that Appellees made, in their Motion to Dismiss, a factual challenge to the bankruptcy court's exercise of subject matter jurisdiction over this contempt claim, and the bankruptcy court misapplied the Fed. R. Civ. Pro. 12(b)(1) standard when it granted Appellees' motion. ECF No. 7 at 22–24. Civil contempt claims may survive the mootness of the underlying proceeding, so long as the claims are remedial in nature. *See In re Bradley*, 588 F.3d at 263 n.8. Placid's claims here of contempt by Appellees appear to qualify as remedial, as Placid sought compensation for its costs and expenses in litigating claims barred by the Discharge Injunction. The bankruptcy court recognized that the contempt claims might survive the mootness of the discharge claims when it "acknowledg[ed] there still may be a claim for damages or shifting of attorneys' fees under [§] 524." App. R. Vol. 3 at 405, ECF No. 3-3 at 158. However, as is discussed below, there is no

reversible error in connection with the bankruptcy court's decision because it decided to abstain in the Adversary Proceeding.

### b. The Court Properly Exercised Its Discretion to Abstain from Hearing the Adversary Proceeding Pursuant to 28 U.S.C. § 1334(c)(1).

Placid also argues on appeal that the bankruptcy court abused its discretion in abstaining from hearing the Adversary Proceeding under 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) governs permissive abstention and provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). "The decision to abstain or not to abstain is committed to the discretion of the district court," and will be affirmed unless the court clearly abused its discretion. *In re Gober*, 100 F.3d 1195, 1207 (5th Cir. 1996) (affirming the bankruptcy court's permissive abstention and the district court's decision to affirm despite the fact that "neither the bankruptcy court nor the district court offered any rationale for abstention in its [written] judgment"). A court may abstain at its discretion from deciding either core or non-core proceedings under § 1334(c)(1) if the interests of justice, comity, or respect for state law so require. *Id.* at 1206.

At the hearing on Appellees' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the bankruptcy judge stated that she would abstain because "the state court will be in the best position, having presided over this litigation for nine years now, to zero in and ascertain" if any of Appellees' claims in the Catahoula Case were actually barred by the Discharge Injunction. App. R. Vol. 3 at 405, ECF No. 3-3 at 158:2–19. With regards to Placid's claims for sanctions, she similarly stated that "the state court who has presided over this matter for nine years now would have a better feel for isolating what attorneys' fees specifically related to Placid defending against claims being asserted that arose pre-1988." *Id.*

The Court finds no abuse of discretion in the bankruptcy court's decision to abstain from the Adversary Proceeding in these circumstances. As the bankruptcy judge noted, proceedings have been

ongoing in state court for almost a decade. To determine whether claims outside the scope of the Eleven Dry Wells are barred by the Discharge Injunction would require substantial inquiry into facts and deeds and land use that goes back at least three decades. Such factual inquiry is already being performed by the state court in the Catahoula Case, and the bankruptcy court did not abuse its discretion in deciding that such inquiry does not need to be repeated in federal court. Furthermore, the bankruptcy court does not have exclusive jurisdiction to adjudicate violations of discharge injunctions. 28 U.S.C. § 1334(b) (2000) ("[D]istrict courts shall have original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." (emphasis added)); *In re Hamilton*, 540 F.3d 367, 373 (6th Cir. 2008) ("[C]ourts have interpreted 28 U.S.C. § 1334(b) as granting concurrent jurisdiction to state courts to determine the nondischargeability of debts and have recognized limited authority for state courts to construe a bankruptcy court's discharge order."); *In re Brady*, 936 F.2d 212, 218 (5th Cir. 1991) ("[T]he only aspect of the bankruptcy proceeding over which the district courts and their bankruptcy units have exclusive jurisdiction is the bankruptcy petition itself. . . . In all other matters arising in or related to title 11 cases . . . state courts have concurrent jurisdiction.").

Similarly, the Louisiana state court in the Catahoula Case is better positioned to evaluate the appropriateness and amount of sanctions relating to Appellees' Eleven Dry Holes claims; the state court, having adjudicated the case for the past nine years, can best determine whether Appellees improperly delayed in filing their motion to dismiss. Furthermore, any attorney's fees relating to pursuit of the Eleven Dry Holes claims will likely be intertwined with fees relating to Appellees' remaining claims in the Catahoula Case regarding later allegedly improperly plugged holes. If sanctions are appropriate, the state court will be best equipped to calculate what fees should be paid. Accordingly, the bankruptcy court did not abuse its discretion in abstaining from the Adversary Proceeding.

### c. The Court Did Not Abuse Its Discretion in Not Permitting Placid to Amend Its Complaint Prior to Dismissal

Finally, the Court briefly addresses Placid's argument that the bankruptcy court abused its discretion by dismissing the Adversary Proceeding without permitting Placid to amend its complaint. As

detailed, *supra*, except for vague language in one sentence of Paragraph 28, Placid's First Amended Complaint focused almost entirely on discharge claims relating to the Eleven Dry Wells, and when repeatedly asked to identify any other claims it intended to cover by Paragraph 28, Placid's counsel could not do so. Placid made neither a written nor oral motion for leave to amend its First Amended Complaint during the hearing before the bankruptcy court.[1] If an argument is not raised to such a degree that the trial court has an opportunity to rule on it, it will not be addressed on appeal. *In re Am. Hous. Found.*, 785 F.3d 143, 159 (5th Cir. 2015). Issues not properly raised in the lower court are waived on appeal. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal."). Because Placid did not properly request leave to amend its complaint, the bankruptcy court did not abuse its discretion by dismissing the case without granting leave to amend.

5. **Conclusion**

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED.**

**SO ORDERED.**

November 14, 2016.

**BARBARA M. G. LYNN**
**CHIEF JUDGE**

---

[1] During the hearing on Appellees' Motion to Dismiss, Placid's counsel only discussed the possibility of amending its Complaint at some point in the future after it had conducted further discovery, and not in connection with addressing the deficiencies raised in Appellees' Motion to Dismiss. App. R. Vol. 3 at 395–96, ECF No. 3-3 at 148–49 ("Once [Placid] figured out what was going on with the 11 dry holes, which was in January of 2015, it filed the adversary proceeding. And once it further figures out what's going on with all this other equipment, it's going to amend its complaint.") (statement of Mr. Leslie).